1  DIANE J. HUMETEWA
   United States Attorney
2  District of Arizona

3  PETER SEXTON
   Assistant United States Attorney
4  Arizona State Bar No. 011089
   Two Renaissance Square
5  40 North Central Avenue
   Phoenix, Arizona 85004
6  peter.sexton@usdoj.gov
   Telephone: (602) 514-7500

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

|  |  |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) |
| v. | ) |
| Matthew Thomas Purse, | ) |
| Defendant. | ) |

CR-08-1359-PHX-GMS

PLEA AGREEMENT

(Cooperation/Testimony Required)

Plaintiff, United States of America, and defendant, MATTHEW THOMAS PURSE, with the advice and consent of defense counsel, agree to the following disposition of this matter:

## PLEA

Defendant will plead guilty to Counts 1, 12 and 18 of the Indictment, which charges defendant with Conspiracy in violation of Title 18, United States Code, Section 371, Mail Fraud in violation of Title 18, United States Code, Section 1341, and Copyright Infringement in violation of Title 18, United States Code, Section 2319(b)(1) and Title 17, United States Code, Section 506(a)(1)(A), all felony offenses. Defendant also consents to the forfeiture allegations contained in the Indictment.

**TERMS**

Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands, however, that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

1. **Maximum Penalties.**

a. **Count 1:** A violation of Title 18, United States Code, Section 371, is a Class D felony punishable by a maximum fine of $250,000.00, or either twice the gross pecuniary gain derived by defendant from the offense or twice the pecuniary loss suffered by another person because of the offense, whichever sum is greater, Title 18, United States Code, Section 3571(b)(3) and (d), a maximum term of imprisonment of five (5) years, a maximum period of supervised release of three (3) years, or all three combined. **Count 12**: A violation of Title 18, United States Code, Section 1341, is a Class C felony punishable by a maximum fine of $250,000.00, or either twice the gross pecuniary gain derived by defendant from the offense or twice the pecuniary loss suffered by another person because of the offense, whichever sum is greater, Title 18, United States Code, Section 3571(b)(3) and (d), a maximum term of imprisonment of twenty (20) years, a maximum period of supervised release of three (3) years, or all three combined. **Count 18**: A violation of Title 18, United States Code, Section 2319(b)(1) [cross-referencing Title 17, United States Code, Section 506(a)(1)(A)], is a Class D felony punishable by a maximum fine of $250,000.00, or either twice the gross pecuniary gain derived by defendant from the offense or twice the pecuniary loss suffered by another person because of the offense, whichever sum is greater, Title 18, United States Code, Section 3571(b)(3) and (d), a maximum term of imprisonment of five

1   (5) years, a maximum period of supervised release of three (3) years, or all three combined.

2   If probation is imposed, the maximum term of probation is five (5) years.

3        b.     According to the advisory Sentencing Guidelines issued pursuant to the

4   Sentencing Reform Act of 1984, the Court shall:

5             1.     Order the defendant to make restitution to the victims of these

6                   offenses, as determined under Section 1B1.3 of the advisory

7                   Sentencing Guidelines and Title 18, United States Code, Sections 3663

8                   and 3663A unless, pursuant to Title 18, United States Code, Section

9                   3663, and Section 5E1.1 of the advisory Sentencing Guidelines, the

10                  Court determines that restitution would not be appropriate in this case;

11            2.     Order the defendant to pay a fine, which may include the costs of

12                  probation, supervised release or incarceration, unless, pursuant to Title

13                  18, United States Code 3572, the Court finds upon consideration of the

14                  factors therein and in Section 3552 that a fine is not appropriate;

15            3.     Order the defendant, pursuant to Title 18, United States Code, Section

16                  3583 and Section 5D1.1 and 2 of the Guidelines, to serve a term of

17                  supervised release when required by statute or when a sentence of

18                  imprisonment of more than one year is imposed, and the Court may

19                  impose a term of supervised release in all other cases.

20       c.     Pursuant to Title 18, United States Code, Section 3013, the Court is required

21  to impose a special assessment on the defendant of $100.00 per count. The special

22  assessment is due at the time the defendant enters the plea of guilty, but in no event shall it

23  be paid later than the time of sentencing.

24

25

26

2.  **Cooperation.**

The defendant will cooperate with the United States on the following terms and conditions.

a.      Defendant will waive the Fifth Amendment privilege against self-incrimination and will provide information in an interview and testify completely and truthfully at any time and any place requested by the United States, including at any state or federal grand jury proceeding, forfeiture proceeding, bond hearing, pretrial hearing, civil and criminal trial, retrial or post-trial hearing.

b.      All such information shall be truthful, honest, candid, and complete with no knowing material false statements or omissions.  Such information shall include all criminal activity known to the defendant.

c.      Defendant will be available for interviews by attorneys and law enforcement officers from the government upon request and reasonable notice.

d.      Defendant will provide the United States with all documents, records, memoranda and the like, at the request of the United States, within the defendant's custody and control or to which the defendant has access, which are related to the subject matter of the investigation or case.

e.      Defendant will neither attempt to protect any person or entity through false information or omissions nor falsely implicate any person or entity.

f.      If defendant or defendant's family is harassed, threatened or otherwise subjected to intimidation because of defendant's cooperation, the United States shall in its complete discretion, take appropriate action to protect defendant and defendant's family.

g.      Nothing in this agreement requires the United States to accept any cooperation or assistance the defendant may choose to proffer.  The decision whether and how to use any information and/or cooperation that defendant provides is in the exclusive reasonable discretion of this office.

4

1   h.  Defendant will not violate any local, state, federal, tribal or foreign laws.

2   i.  The defendant shall comply with all terms and conditions of release.

3   j.  The defendant will also provide all information concerning defendant's assets,

4 and the assets of any co-defendants, if known, for the purpose of restitution.

5   k.  Defendant shall not knowingly contact any person who has been criminally

6 charged in any forum.

7   l.  Self-incriminating information provided by the defendant during cooperation

8 involving criminal activity for which the defendant has not been or will not be charged

9 pursuant to this agreement will not be used against the defendant and in particular will not

10 be used in determining defendant's advisory guideline range pursuant to Section 1B1.8 of the

11 Sentencing Guidelines.

12   m.  Nothing shall limit the United States' methods of verifying the truthfulness of

13 defendant's statements.  The United States may confirm the accuracy of any information

14 which defendant provides under the terms of this agreement by use of any investigative

15 means which it deems appropriate and necessary.  Whether there has been a complete,

16 truthful and candid disclosure by the defendant will be evaluated and decided by the United

17 States Attorney for the District of Arizona and by that person alone

18   n.  The plea of guilty shall be entered as soon as practicable.

19   o.  The sentencing on the guilty plea will be deferred, with consent of the Court,

20 for a period of at least six months, and, after such period, upon recommendation of the

21 United States and agreement by this Court, may be deferred for additional periods.  It is the

22 intention of the parties that sentencing on the instant charges be postponed until such time

23 as defendant's cooperation has been completed.

24   p.  At the conclusion of defendant's cooperation, pursuant to this Plea Agreement,

25 the United States may, at the of sentencing, move pursuant to Title 18, United States Code,

26 Section 3553(e), Title 28, United States Code, Section 994(n), and advisory Sentencing

1    Guidelines Section 5K1.1, that the Court depart from the advisory Guidelines to reflect any

2    substantial assistance the defendant may give during this investigation and prosecution.  If

3    a non-binding recommendation is made, it will be made according to Sentencing Guidelines

4    Section 5K1.1.  Defendant understands that while the Court may take the defendant's

5    cooperation into account in determining the sentence to be imposed, the Court has complete

6    discretion to impose a sentence within the statutory maximum penalty for the defendant's

7    offense of conviction.

8    3.    **Recommendations Regarding Sentencing.**

9         a.    In addition to the possibility of a departure motion as described in 2(p) above,

10   the United States will make a non-binding recommendation that the Court sentence the

11   defendant to the low end of the appropriate sentencing range.  If probation is available within

12   that range and allowed under the Sentencing Guidelines, the United States will make a non-

13   binding recommendation of probation to the Court.  If a split sentence (Zone C) is available

14   within that range, the United States will make a non-binding recommendation that the Court

15   impose the minimum term of confinement.

16        b.    If the defendant makes a full and complete disclosure to the Probation

17   Department of the circumstances surrounding defendant's commission of the charged

18   offenses and related conduct, and demonstrates an acceptance of responsibility for

19   defendant's actions by virtue of defendant's conduct up to and including the time of

20   sentencing, the United States will, pursuant to Section 3E1.1 of the advisory Sentencing

21   Guidelines, make a non-binding recommendation to the sentencing Court that the Court

22   reduce by two (2) levels the adjusted offense level applicable to this offense.   If the

23   defendant's offense level is a level sixteen (16) or greater, before factoring in any reduction

24   for acceptance of responsibility, the United States will make a non-binding recommendation

25   that the Court reduce by three (3) levels the adjusted offense level applicable to this offense,

26   pursuant to advisory Sentencing Guideline § 3E1.1(b).

c.      Defendant understands that the United States' recommendations are not binding on the Court.

d.      The United States retains the unrestricted right to make any and all statements it deems appropriate to the Probation Office and to make factual and legal responses to any statements made by the defendant or defense counsel or objections to the presentence report or to questions by the Court at the time of sentencing.

**4.      Defendant's Agreements and Obligations.**

a.      The defendant agree that the amount of loss/restitution in this matter exceeds $500,000.00, the precise amount to be determined before sentencing in consultation with individual consumer (counterfeit software purchasers) and institutional victims (software companies).  Defendant agrees to this loss range, and agrees to pay restitution to the victims in the amount so determined by the Court.

b.      Defendant agrees to be responsible for all current and back taxes owed (business and individual), with interest and penalties, for tax liabilities accrued personally or in relation to any business under defendant's name or control.  Defendant will cooperate with the IRS in determining the amount of taxes, interest and penalties owed to the United States.  This provision is to be complied with before sentencing.

**5.      Breach of the Agreement.**

If the defendant fails to comply with any obligation or promise in this Plea Agreement, the United States:

a.      may, in its sole discretion, declare any provision of this Plea Agreement null and void, and the defendant understands that the defendant will not be permitted to withdraw the plea of guilty made in connection with this Plea Agreement;

b.      may prosecute the defendant for any offense known to the United States for which the defendant is responsible, and defendant waives any statute of limitations, Speedy

1 | Trial Act, and constitutional restrictions for bringing charges after the execution of this Plea

2 | Agreement;

3 |     c.     may argue for a maximum statutory sentence for the offense to which

4 | defendant has pled guilty;

5 |     d.     may use in any prosecution any information, statement, document, or evidence

6 | provided by defendant both before and after entering into this Plea Agreement, including

7 | derivative evidence;

8 |     e.     may advise the Bureau of Prisons that defendant is no longer a cooperating

9 | witness, and recommend redesignation of defendant to a higher custodial level.

10 |     If there is a dispute regarding the obligations of the parties under this Plea Agreement,

11 | the United States District Court shall determine whether the United States or the defendant

12 | has failed to comply with this Plea Agreement, including whether the defendant has been

13 | truthful.

14 | **6.     Agreement to Dismiss or Not to Prosecute.**

15 |     a.     Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States will move to dismiss

16 | defendant from the remaining counts in the Indictment at sentencing.

17 |     b.     The United States agrees not to bring any further federal charges against the

18 | defendant arising out of the facts alleged in the Indictment, excluding crimes of violence, if

19 | any.

20 |     c.     This agreement does not, in any manner, restrict the actions of the United States

21 | in any other district nor bind any other United States Attorney's Office.

22 | **7.     Waiver of Defenses and Appeal Rights.**

23 |     The defendant waives any and all motions, defenses, probable cause determinations,

24 | and objections which the defendant could assert to the indictment or to the Court's entry of

25 | judgment against the defendant and imposition of sentence upon the defendant, providing the

26 | sentence is consistent with this agreement.  The defendant further waives: (1) any right to

1   appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition

2   of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence

3   appeals); and (3) any right to collaterally attack defendant's conviction and sentence under

4   Title 28, United States Code, Section 2255, or any other collateral attack. The defendant

5   acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack

6   the defendant might file challenging his conviction or sentence in this case.

7   **8.      Perjury and Other False Statement Offenses or Other Offenses.**

8         Nothing in this Plea Agreement shall be construed to protect the defendant in any way

9   from prosecution for perjury, false declaration or false statement, or any other offense

10  committed by defendant after the date of this Plea Agreement. Any information, statements,

11  documents, and evidence which defendant provides to the United States pursuant to this Plea

12  Agreement may be used against the defendant in all such prosecutions.

13  **9.      Reinstitution of Prosecution.**

14        If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the

15  United States will be free to prosecute the defendant for all charges of which it has

16  knowledge, and any charges that have been dismissed because of this Plea Agreement will

17  be automatically reinstated. If that occurs, defendant waives any objections, motions, or

18  defenses based upon the Statute of Limitations, the Speedy Trial Act or constitutional

19  restrictions in bringing of the later charges or proceedings. The defendant also agrees and

20  understands that any statements made by defendant during cooperation or at the time of the

21  defendant's sentencing may not be used against the defendant in any subsequent hearing,

22  trial, or proceeding, except for impeachment, cross-examination or rebuttal of any witness,

23  including the defendant. All other evidence derived from defendant's cooperation may be

24  used by the United States directly against the defendant in its case-in-chief, for cross

25  examination or rebuttal in any hearing, trial or proceeding.

26

10.    **Disclosure of Information to U.S. Probation Office.**

Defendant understands the United States' obligation to provide all information in its file regarding defendant to the United States Probation Office. The defendant will cooperate fully with the United States Probation Office. Such cooperation will include truthful statements and response to any questions posed by the Probation Department.

11.    **Forfeiture, Civil, and Administrative Proceedings.**

a.    Nothing in this agreement shall be construed to protect the defendant from civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.

b.    Defendant will identify all assets and identify the source of income used to obtain the assets. Defendant will identify all assets used to facilitate the commission of any crime charged in this indictment. Defendant will testify truthfully in any civil forfeiture proceeding.

c..    Further, this agreement does not preclude the United States from instituting any civil or administrative proceedings as may be appropriate now or in the future.

## ELEMENTS AND FACTUAL BASIS

The defendant understands that if the case were to proceed to trial, the government would be required to prove the following elements beyond a reasonable doubt before the defendant could be found guilty of the offense to which the defendant is pleading guilty:

I understand that the essential elements of **Conspiracy** in violation of Title 18, United States Code, Section 371, are as follows:

(1)    During the time frame set forth in the Indictment, there was an agreement between two or more persons to commit one or more of the crimes of Mail Fraud (18 U.S.C. §1341), Wire Fraud (18 U.S.C. § 1343), Trafficking in

1    Counterfeit Labels (18 U.S.C. § 2318), Criminal Copyright Infringement (18

2    U.S.C. § 2319), and Trafficking in Counterfeit Goods (18 U.S.C. § 2320);

3    (2)    The defendant became a member of the conspiracy knowing of at least one of

4    the objects of the conspiracy and intending to help accomplish the object[s];

5    and,

6    (3)    One of the members of the conspiracy performed at least one overt act for the

7    purpose of carrying out the conspiracy.

8    I understand that the essential elements of **Mail Fraud** in violation of Title 18,

9    United States Code, Section 1341, are as follows:

10    (1)    During the time frame set forth in the Indictment, defendant or other co-

11    conspirators, made up a scheme or plan for obtaining money or property by

12    making false promises or statements;

13    (2)    Defendant and other co-conspirators knew that the promises and statements

14    were false;

15    (3)    The false promises or statements were material, that is they would reasonably

16    influence a person to part with money or property;

17    (4)    Defendant and other co-conspirators acted with the intent to defraud; and,

18    (5)    Defendant and other co-conspirators used, or caused to be used, the mails or

19    other private or commercial interstate carriers to carry out or attempt to carry

20    out the scheme.

21    I understand that the essential elements of **Wire Fraud**, in violation of Title 18,

22    United States Code, Section 1343, are as follows:

23    (1)    During the time frame set forth in the Indictment, defendant or other co-

24    conspirators, made up a scheme or plan for obtaining money or property by

25    making false promises or statements;

26

11

(2)    Defendant and other co-conspirators knew that the promises and statements were false;

(3)    The false promises or statements were material, that is they would reasonably influence a person to part with money or property;

(4)    Defendant and other co-conspirators acted with the intent to defraud; and,

(5)    Defendant and other co-conspirators used, or caused to be used, wire communications in interstate commerce to carry out or attempt to carry out the scheme.

I understand that the essential elements of **Trafficking in Counterfeit Labels**, in violation of Title 18, United States Code, Section 2318(a)(1)(B), (a)(2), (c)(2),(c)(3)(B), and (c)(4), are as follows:

(1)    During the time frame set forth in the Indictment, defendant and others knowingly trafficked;

(2)    In labels affixed to, enclosing, or accompanying computer software programs, or documentation or packaging of such works;

(3)    The documentation, labeling and packaging were counterfeit or illicit; and

(4)    The defendant and others used or intended to use the mail, a facility of interstate commerce, or the counterfeit labels were affixed to or enclosed with copyrighted software materials.

I understand that the essential elements of **Criminal Copyright Infringement**, in violation of Title 18, United States Code, Section 2319(b)(1) [cross-referencing Title 17, United States Code, Section 506(a)(1)(A), are as follows:

(1)    During the time frame set forth in the Indictment, defendant and others willfully infringed for profit;

(2)    The copyrights of various copyrighted works of computer software;

(3)    For the purpose of commercial advantage and private financial gain,

(4)    By the reproduction and distribution,

(5)    During a 180-day period from July 1, 2005 to December 28, 2005;

(6)    Ten (10) or more copies of one or more copyrighted works of computer software;

(7)    Which had a total retail value of more than $2500.00 and had not been the subject of a first *SALE* **P.4.**

I understand that the essential elements of **Trafficking in Counterfeit Goods**, in violation of Title 18, United States Code, Section 2320, are as follows:

(1)    During the time frame set forth in the Indictment, the defendant and others trafficked or attempted to traffic in goods or services;

(2)    Defendant and others used counterfeit marks on or in connection with those goods or services;

(3)    Defendant knowingly used these marks, and knew the marks were counterfeits.

I further agree that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

## CONSPIRACY

Beginning at a time at least as early as on or about November, 2003, and continuing through at least on or about February, 2006, in the District of Arizona and elsewhere, defendant MATTHEW THOMAS PURSE and others, doing business as or operating under the names of SoftwareDiner.com, Thesoftwareyard.com, Argyleequity.com, Eagletronics.com, Tekdealer.com, Maranello Trust, PAW Investments, LLC, Markus Hamilton, LLC, Paul Richardson, LLC, and Turrett, LLC, and others, did knowingly and willfully agree and conspire with others, namely co-defendant Christopher Loring Walters, to commit one or more of the following offenses against the United States:

a.    Title 18, United States Code, Section 1341 (Mail Fraud);

b.    Title 18, United States Code, Section 1343 (Wire Fraud);

13

c.   Title 18, United States Code, Section 2318 (Trafficking in Counterfeit Labels, Packaging and Containers);

d.   Title 18, United States Code, Section 2319 (Criminal Copyright Infringement); and

e.   Title 18, United States Code, Section 2320 (Trafficking in Counterfeit Goods).

## Objects of the Conspiracy and Schemes to Defraud

The objects of the conspiracy and schemes to defraud were:

a.   to produce unauthorized and counterfeited copies of legitimate copyrighted software;

b.   to fraudulently sell and distribute this counterfeited software through various Internet locations and Web sites created and operated by defendants; and

c.   to profit financially from the sale and distribution of counterfeit software.

## Means and Manner of the Conspiracy and Schemes to Defraud

The manner and means used by the defendant and others through the entities, Web sites or Internet locations described above, to effect the objects of the conspiracy and the schemes and artifices to defraud, included the following:

a.   Defendant and others created various eBay merchant accounts or other commercial Web sites from which to sell and distribute counterfeit software;

b.   Defendant and others advertised or marketed, on various Internet listings or Web locations, that they had access to or were authorized distributors of various brand name software from companies such as Acronis, Apple, Corel, FWB, Intego, Intuit, Macromedia, McAfee,

Norton, Pinnacle, Roxio, Sage, Symantec, Webroot, and many other software companies.

c.   Defendant and others claimed they carried an inventory of legitimate software products from these brand name software companies;

d.   Defendant and others offered victim-consumers these veiled counterfeited software products (i.e., bait and switch) at greatly discounted or reduced prices from the prices offered at well-known retail and wholesale outlets;

e.   Defendant and others established bank accounts and credit card processing accounts with various financial institutions in order to process victim credit card purchases of counterfeit software;

f.   Defendant and others acquired software duplicating equipment to mass produce and label counterfeit copies cloned from legitimate brand name software;

g.   Defendant and others bought or acquired legitimate versions of copyrighted software from which to create their stock of counterfeit software;

h.   Defendant and others attempted to package, brand and mark the counterfeit software in the manner and way it was marketed and labeled by the actual software companies;

i.   Defendant and others distributed their counterfeit software to victims through the mails and other private commercial carriers;

j.   Defendant and others periodically changed Web sites, bank accounts, and business addresses to avoid detection from law enforcement and nullify consumer and third party complaints; and

k.     Defendant and others further deceived victims by falsely telling victims that the serial, registration and authorization numbers were legitimate, which lulled victims and delayed consumer complaints and refund requests.

### Overt Acts

In furtherance of the conspiracy and scheme to defraud, and to effect the objects of the conspiracy, the defendants and others through the entities and Internet locations listed above, committed or caused to be committed the following overt acts, among others, in the District of Arizona and elsewhere:

a.     The following overt acts, among others, were committed:

(1)     On or about March 8, 2004, victim NRM of Wray, Colorado was sent one counterfeit Intuit QuickBooks Basic 2004 CD.

(2)     On or about April 7, 2004, victim CS of Fenton, Missouri was sent one counterfeit Intuit QuickBooks Basic 2003 CD.

(3)     On or about April 26, 2004, victim BPG of Bethesda, Maryland was sent one counterfeit Intuit QuickBooks Pro 6.0 for Mac 2004 CD.

(4)     On or about May 13, 2004, victim DK of Landover, Maryland was sent two counterfeit Intuit QuickBooks Pro 2004 CDs.

(5)     On or about August 9, 2004, victim TW of Rocklin, California was sent one counterfeit Intuit QuickBooks Pro 2004 CD.

(6)     On or about August 24, 2004, victim JM of Paonia, Colorado was sent one counterfeit Intuit QuickBooks Basis 2003 CD.

(7)     On or about August 30, 2004, victim JJL of Berthoud, Colorado was sent 10 counterfeit Sage Act 6.0 for Windows CDs and 10 counterfeit Sage Act Palm OS CDs.

(8)     On or about January 25, 2005, defendant PURSE opened P.O. Box 60632 in Phoenix, Arizona 85082.  Additional names listed on the application were Steve Adams, Brett Siegel, SofwareDiner, PAW Investments, LLC, and TekDealers, LLC.

(9)     On or about September 7, 2005, victim JLT of Kaysville, Utah was charged for and sent a counterfeit copy of Apple iWorks '05.

(10)    On or about September 28, 2005, victim JAM of Sacramento, California was charged for and sent counterfeit copies of Sage Act Palm OS and Sage Act 6.0 for Windows.

(11)    On or about October 1, 2005, victim KJ of Renton, Washington was charged for and sent a counterfeit copy of Acronis True Image 8.0.

(12)    On or about October 18, 2005, victim GY of San Antonio, Texas was charged for and sent a counterfeit copy of Intuit QuickBooks Pro 2005.

(13)    On or about November 18, 2005, victim GP of Bovey, Minnesota was charged for and sent a counterfeit copy of Intuit QuickBooks Basic 2005.

(14)    On or about November 18, 2005, victim KJ of Poway, California was charged for and sent a counterfeit copy of Intuit's QuickBooks Pro for Mac 2005.

(15)    On or about February 1, 2006, defendant PURSE renewed the rent on P.O. Box 60632 in Phoenix, Arizona 85082.

In violation of Title 18, United States Code, Sections 371 and 2.

## MAIL FRAUD

Beginning at least as early as on or about November, 2003, and continuing through at least on or about February, 2006, in the District of Arizona and elsewhere, defendant MATTHEW THOMAS PURSE, and others, doing business as or operating under the names of SoftwareDiner.com, Thesoftwareyard.com, Argyleequity.com, Eagletronics.com, Tekdealer.com, Maranello Trust, PAW Investments, LLC, Markus Hamilton, LLC, Paul Richardson, LLC, and Turrett, LLC, and others, namely co-schemer Christopher Loring Walters, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent promises, pretenses and representations.

On or about the date listed below, in the District of Arizona and elsewhere, for the purpose of executing and attempting to execute said scheme and artifice to defraud and to obtain money by means of materially false and fraudulent promises, pretenses and representations, defendant MATTHEW THOMAS PURSE, doing business as or operating under the names of SoftwareDiner.com, Thesoftwareyard.com, Argyleequity.com, Eagletronics.com, Tekdealer.com, Maranello Trust, PAW Investments, LLC, Markus Hamilton, LLC, Paul Richardson, LLC, and Turrett, LLC, and others, placed and caused to be placed in a post office and authorized depository for mail matter, to be sent and delivered by the United States Postal Service, and deposited and caused to be deposited for delivery by commercial interstate carriers, the software shown below, identified in the Indictment as Count 12, from Chandler, Arizona to Bovey, Minneasota:

| Ct | Mail Date | Item Mailed | Sent From | Sent To | Carrier |
|----|-----------|-------------|-----------|---------|---------|
| 12 | 11/23/2005 | 1/Intuit (QuickBooks Basic 2005) | Chandler, AZ 85224 | [GP] Bovey, MN | USPS |

In violation of Title 18, United States Code, Sections 1341 and 2.

**Criminal Copyright Infringement**

Beginning at least as early as on or about November, 2003, and continuing through at least on or about February, 2006, in the District of Arizona and elsewhere, defendant MATTHEW THOMAS PURSE, doing business as or operating under the names of SoftwareDiner.com, Thesoftwareyard.com, Argyleequity.com, Eagletronics.com, Tekdealer.com, Maranello Trust, PAW Investments, LLC, Markus Hamilton, LLC, Paul Richardson, LLC, and Turrett, LLC., and others, namely co-defendant Christopher Loring Walters, did knowingly and willfully infringe the copyrights of copyrighted works, that is computer software, for the purpose of commercial advantage and private financial gain, by the reproduction and distribution, during a 180-day period from July 1, 2005 to December 28, 2005, of at least ten copies of one or more copyrighted works, which had a total retail value of more than $2500.00, and which had not been the subject of a first sale and were not lawfully made, including, but not limited to, the copyrighted works set forth below:

```
Apple iLife '05
Apple iWorks 2005
Corel Draw 12 Graphics Suite
Intuit QuickBooks Basic 2005
Intuit QuickBooks Pro 2005
Intuit QuickBooks Pro for Mac 2005
Intuit QuickBooks Pro for Mac 6.0
Intuit Quicken Basic 2005
Intuit Quicken Premier Home and Business 2005
Intuit Turbo Tax Business 2004
Intuit Turbo Tax Deluxe 2004
Intuit Turbo Tax Premier 2004
Intuit Turbo Tax Premier Home and Business
Intuit Turbo Tax Premier Home and Business 2003
Macromedia FlashMX Professional 2004
McAfee QuickClean 2005 (Version 5.0)
Norton Ghost 2003
Norton Internet Security 2003 Professional Edition
Pinnacle Studio Version 8
Roxio Easy CD/DVD Creator Basic Edition
Roxio PhotoSuite 7 Platinum
Sage Act 6.0 for Windows
Sage Act Palm OS
Symantec Norton Internet Security 3.0
WordPerfect Office 11
```

1  WordPerfect Office 12

2  In violation of Title 17, United States Code, Section 506(a)(1)(A), and Title 18,

3  United States Code, Sections 2319(b)(1) and 2.

4  I understand that I will have to swear under oath to the accuracy of this statement, and

5  if I should be called upon to testify about this matter in the future, any intentional material

6  inconsistencies in my testimony may subject me to additional penalties of perjury or false

7  swearing which may be enforced by the United States under this agreement.

8  **DEFENDANT'S APPROVAL AND ACCEPTANCE**

9  I have read each of the provisions of the entire Plea Agreement with the assistance of

10  counsel and understand its provisions.

11  I have discussed the case and my constitutional and other rights with my attorney. I

12  understand that by entering my plea of guilty I will be giving up my rights to plead not guilty,

13  to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to

14  present evidence in my defense, to remain silent and refuse to be a witness against myself by

15  asserting my privilege against self-incrimination -- all with the assistance of counsel -- and

16  to be presumed innocent until proven guilty beyond a reasonable doubt.

17  I agree to enter my guilty plea as indicated above on the terms and conditions set forth

18  in this Plea Agreement.

19  I have been advised by my attorney of the nature and elements of the charges to which

20  I am entering my guilty plea. I have further been advised by my attorney of the nature and

21  range of the possible sentence and that my ultimate sentence will be determined according

22  to the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984.

23  I understand that the Guideline range discussed with my attorney or the prosecution is not

24  binding on the Court and is merely my attorney's or the United States's estimates.

25  My guilty plea is not the result of force, threats, assurances or promises other than the

26  promises contained in this Plea Agreement. I agree to the provisions of this Plea Agreement

as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions.

I fully understand that, if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be altered.

I agree that this written Plea Agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorney), and specifically any predictions as to the applicable guideline range, which are not contained within this written Plea Agreement, are without force and effect and are null and void.

I am extremely satisfied that my defense attorney has represented me in a very competent manner. I am fully capable of understanding the terms and conditions of this Plea Agreement. I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this Plea Agreement.

 2-26-09
Date

Matthew Thomas Purse
Defendant

### DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the Plea Agreement with my client, in detail, and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature and elements of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea. No assurances, promises, or representations have been given to me or to the defendant

21

by the United States or by any of its representatives which are not contained in this written agreement.  I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this Plea Agreement as in the best interests of my client.  I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.


__2-26.09_____          _____
Date                                         Robert Billar
                                             Attorney for Defendant


### UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement.  I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.


__2/26/09_____          _____
Date                                         Peter Sexton
                                             Assistant U.S. Attorneys


### COURT'S ACCEPTANCE

__01/11/10_____          _____
Date                                         G. Murray Snow
                                             United States District Judge

22